**Opinion filed September 19, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00077-CV

_____

## IN THE INTEREST OF L.G.B., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 10762-CX**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the mother and father of L.G.B.  *See* TEX. FAM. CODE ANN. § 161.001 (West Supp. 2023).  Both the mother and father appealed.  We affirm the trial court's order of termination.

### *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence.  FAM. §§ 161.001(b), 161.206(a), (a-1) (West 2022).  To terminate one's parental rights under Section 161.001, it must be shown by clear and convincing

evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(V) and that termination is in the best interest of the child. *Id.* § 161.001(b). In this case, the trial court found that the mother had committed two of the acts listed in Section 161.001(b)(1)—those found in subsections (D) and (E). The trial court also found that termination of the mother's parental rights was in the best interest of the child. *See id.* §§ 161.001(b)(2), 161.003(a)(5). The trial court found that the father had also committed two of the acts listed in Section 161.001(b)(1)—those found in subsections (E) and (O), and that termination was in the best interest of the child. *See id.* §§ 161.001(b)(1)(D), (E), (b)(2).

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). We note that the factfinder is the sole arbiter of the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the

child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

*Procedural and Factual Background*

In October of 2021, the Department of Family and Protective Services (the Department) received an intake regarding domestic violence between the mother and father, as well as substance abuse. The Department received another intake that same month, and a case was officially opened in December 2021. As part of the mother's Family Plan of Service, she was ordered to attend parenting education and domestic violence classes, complete a substance abuse assessment, and submit to random drug screens. The mother completed all aspects of her plan aside from the consistent completion of all requested drug screens. The father was incarcerated at the start of the case, but successfully completed a parenting education course as ordered.

At the final termination hearing in March 2023, the Department presented evidence demonstrating that the mother, father, and L.G.B. tested positive for methamphetamine multiple times throughout the pendency of the case. In December 2021, three-year-old L.G.B. tested positive for methamphetamine. In March 2022, the father tested positive for methamphetamine while incarcerated. In July 2022, the mother tested positive for methamphetamine. The mother testified that this was her first time to use methamphetamine, and that she does not know why she decided to start using while the case was pending. In February 2023, the mother tested negative for all substances, but in July 2023, the mother again

tested positive for methamphetamine. In August 2023, L.G.B. tested positive for methamphetamine. And in December 2023, the mother received a negative urinalysis test and a positive hair follicle test for methamphetamine. According to the permanency case manager, L.G.B. tested positive three times throughout the pendency of the case.

The trial court granted the mother a monitored return of L.G.B. in May 2023, which ended after the mother's positive test in July 2023. The mother subsequently completed an inpatient treatment program and testified that she was committed to staying in the outpatient program and working with her recovery coach.

The father was incarcerated at the start of the case and was released in January 2023. Following his release, he did not contact the permanency case manager. The father only maintained communication with the case manager after the father was later confined in jail in August 2023. The father was incarcerated for the entirety of the case, except for a period between January and August 2023.

Additional evidence was presented about the father's criminal history from 2001 to 2023, which included at least three convictions for driving while intoxicated, five convictions for state-jail felony theft, assault-family-violence offenses, a protective-order violation, an assault offense, and a criminal-trespass offense. Of those offenses, one theft conviction, two assault-family-violence offenses, the violation of a protective order, and the assault all occurred following L.G.B.'s birth. The father testified that he is currently in a substance abuse treatment facility (SATF) as a condition of his deferred adjudication community supervision for his felony family-violence offenses, and that he has been able to learn anger management skills. He indicated that upon his release from this program, he expects to have a better foundation to be successful—money saved, current on probation fees, and able to find a place to live—and that he was just "tired of this."

4

The case manager testified that L.G.B. was "bonded" to both parents. Initially, L.G.B. did not bond with the father, but as they were able to have visitation, she developed a bond to him. L.G.B. had not seen her father in "over a year and a half" at the time visitation began.

At the time of the hearing, L.G.B. was in a foster placement and was doing very well. The foster family was not moving forward with adoption, and the Department was in the process of conducting home studies with the mother's niece and the father's sister. The case manager testified that termination of the mother's and father's parental rights was in the best interest of L.G.B.

### Father's Appeal

#### Endangering Conduct

In the father's first issue, he challenges the findings made by the trial court under Section 161.001(b)(1)(E). We must address a parent's challenge to a trial court's findings under (E). *See In re N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019) (addressing due process and due course of law with respect to appellate review of grounds (D) and (E) and holding that an appellate court must provide a detailed analysis if affirming the termination on either of these grounds).

Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 34 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). With respect to the sufficiency of the evidence to support a finding under subsection (E), "endangering conduct is not limited to actions directed towards the child." *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009)

(citing *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). The endangering conduct may include the parent's actions before the child's birth and may relate to the parent's actions while the parent had custody of other children. *Id.*; *In re S.T.*, No. 11-19-00363-CV, 2020 WL 2610393, at *3–4 (Tex. App.—Eastland May 18, 2020, pet. denied) (mem. op.) (upholding finding under subsection (E) based upon parent's conduct with other children). Additionally, domestic violence may constitute evidence of endangerment. *C.J.O.*, 325 S.W.3d at 265.

If a parent is imprisoned, that imprisonment alone is not enough to constitute an engagement in a course of conduct, which would endanger the emotional or physical well-being of a child. *In re J.F.-G.*, 627 S.W.3d 304, 312–313 (Tex. 2021) (citing *Boyd*, 727 S.W.2d at 533). "[I]ncarceration does support an endangerment finding if the evidence, including imprisonment shows a course of conduct which has the effect of endangering the physical or emotional well-being of the child." *Id.* at 313 (internal quotation marks omitted) (citing *Boyd*, 727 S.W.2d at 533–34). However, the criminal history of a parent—considering the nature of the crimes, duration of incarceration, and the pattern of escalating or repeated convictions—can support a finding of endangerment. *Id.* (citing *J.O.A.*, 283 S.W.3d at 345–46). Thus, a parent's imprisonment and criminal history are certainly a factor that the trial court may weigh when considering endangerment. *Id.* (citing *Boyd*, 727 S.W.2d at 533).

Here, support for a finding under subsection (E) is enough to uphold the termination of the parental rights of the father, and the evidence presented at trial clearly supports such a finding. The record shows that the father committed at least five crimes since the child was born. Over a year prior to the final hearing, he was placed on deferred adjudication community supervision for assaulting L.G.B.'s mother, this offense was enhanced to a third-degree felony due to his prior family-violence convictions. The record also shows that the father violated a protective

order, and as a result was not allowed supervised visitation with L.G.B. at the start of the case.

Based upon the evidence presented at trial, the trial court could have reasonably found by clear and convincing evidence that the father engaged in a course of conduct that would endanger the well-being of L.G.B. *See In re J.W.*, 645 S.W.3d 726, 749 (Tex. 2022). Evidence of the serious nature of the father's crimes, along with the many periods of imprisonment not only prevented him from establishing a relationship with her before she was five, but also clearly shows a lack of consideration of endangering circumstances for his child. *See J.F.-G.*, 627 S.W.3d at 315. The father argues that incarceration alone is not enough to support a finding under subsection (E). However, the father ignores the violent nature of his lengthy criminal history and its impact on his relationship with L.G.B.—the *course* of conduct. The father's convictions are for increasingly violent crimes—rising from theft to assaultive offenses. Domestic violence, even if not directed toward the child, is relevant to the risk of endangerment of the child's well-being. *J.O.A.*, 283 S.W.3d at 345. Further, the father was incarcerated for most of the case, and only began visiting with L.G.B. in October or November 2023. These are acts and omissions properly considered by the trial court as they relate to the physical and emotional well-being of L.G.B.

We must view the facts in a light favorable to the finding of the trial court. *See id.* Therefore, we hold that the evidence is legally and factually sufficient to support the trial court's finding under subsection (E). Accordingly, we overrule the father's first issue. Because only one statutory ground is necessary to support termination, and because we have upheld the trial court's finding as to subsection (E), we need not address the father's arguments in his second issue regarding subsection (O). *See* FAM. § 161.001(b)(1); *N.G.*, 577 S.W.3d at 234–35; *see also* TEX. R. APP. P. 47.1.

*Best Interest*

In the father's third issue, he challenges the sufficiency of the evidence to support the trial court's finding that termination of his parental rights was in the best interest of L.G.B.

With respect to L.G.B.'s best interest, the evidence set forth above shows that the father was not able to meet L.G.B.'s physical or emotional needs, or that he could provide her with a safe and stable home environment. Clear and convincing evidence shows that the father's escalating conduct in the home clearly endangered the physical and emotional well-being of L.G.B. Testimony shows that he had not spent much time with L.G.B., that he was prone to violence, and that he was unable to refrain from engaging in dangerous criminal activity. At the time of the termination hearing, the Department had identified multiple possible long-term placement options for L.G.B. Furthermore, the case manager testified that it would be in L.G.B.'s best interest to terminate the parental rights of the father.

The trial court, as the factfinder, is the sole judge of the witnesses' credibility. *A.B.*, 437 S.W.3d at 503. In light of the deference to be given the trial court in this regard, the evidence presented at trial, and the *Holley* factors, we conclude that the trial court could reasonably have formed a firm belief or conviction that termination of the father's parental rights would be in L.G.B.'s best interest. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of those involved, the plans for the child by the Department, the acts or omissions of the father that may indicate the existing parent-child relationship is not a proper one, and considering any excuse for the acts or omissions of the father, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of the father's parental rights is in the best interest of L.G.B. *See id.* The record supports the trial

8

court's findings as to the child's best interest, *see C.H.*, 89 S.W.3d at 27, and we cannot hold that the trial court's findings in this case as to best interest are not supported by clear and convincing evidence. Accordingly, we overrule the father's third issue.

*Mother's Appeal*

*Best Interest*

In the mother's sole issue, she challenges the sufficiency of the evidence to support the trial court's findings that termination of her parental rights would be in the best interest of L.G.B. The mother does not challenge the trial court's findings under subsections (D) or (E).

With respect to L.G.B.'s best interest, the evidence set forth above shows that the mother was not able to meet the needs of L.G.B. and was not able to take care of herself in a manner that would ensure L.G.B.'s safety. Clear and convincing evidence shows that placing L.G.B. in a home with the mother would create a risk of danger to the child's safety. Testimony showed that, notwithstanding her efforts, the mother was not able to maintain sobriety and could not provide any reason why she began using methamphetamine after the Department intervened. Further, she was unwilling or unable to identify how L.G.B. tested positive for methamphetamine three times in a three-year period.

At the time of the termination hearing, the Department had identified multiple possible long-term placement options for L.G.B. Furthermore, the case manager testified that it would be in L.G.B.'s best interest to terminate the parental rights of the mother.

The trial court, as the factfinder, is the sole judge of the witnesses' credibility. *A.B.*, 437 S.W.3d at 503. In light of the deference to be given the trial court in this regard, the evidence presented at trial, and the *Holley* factors, we conclude that the trial court could reasonably have formed a firm belief or conviction that termination

9

of the mother's parental rights would be in L.G.B.'s best interest. *See Holley*, 544 S.W.2d at 371–72. Considering the record as it relates to the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of those involved, the plans for the child by the Department, the acts or omissions of the mother that may indicate the existing parent-child relationship is not a proper one, and considering any excuse for the acts or omissions of the mother, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of the mother's parental rights is in the best interest of L.G.B. *See id.* We defer to the trial court's findings as to the child's best interest, *see C.H.*, 89 S.W.3d at 27, and we cannot hold in this case that the trial court's findings as to best interest are not supported by clear and convincing evidence. Accordingly, we overrule the mother's sole issue.

Further, and based upon our review of the entire record, we hold that the trial court reasonably could have formed a firm belief or conviction that termination of the parent–child relationship between the mother and L.G.B. was in the child's best interest. *See Holley*, 544 S.W.2d at 371–72; *see also C.H.*, 89 S.W.3d at 25–26. The record demonstrates the mother's efforts to comply with the permanency plan ordered by the trial court. On the other hand, the mother did not deny that she had used, and tested positive for, methamphetamine while under the court-ordered permanency plan. In fact, the mother *chose* to begin using methamphetamine *after* L.G.B.'s removal. Additionally, the mother used methamphetamine again following the start of a monitored return with L.G.B. The child tested positive for methamphetamine while in the care of the mother, and the mother had no explanation as to why. Further, the father was arrested and prosecuted for assault family violence against the mother and the mother testified that L.G.B. was present in the home at the time of the assault. The mother also testified that she called 9-1-1 "plenty of times." The mother does not contest the trial court's

endangerment findings under (D) or (E), and her conduct and omissions demonstrate that she was unable to be a safe caretaker for L.G.B.

Giving due consideration to evidence that the factfinder could reasonably have found to be clear and convincing, we must affirm the trial court's finding. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). Thus, we conclude that the evidence is legally and factually sufficient to support the trial court's finding that termination of the mother's parental rights is in the best interest of L.G.B.

*This Court's Ruling*

We affirm the trial court's order of termination.


W. BRUCE WILLIAMS

JUSTICE


September 19, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.